O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA H., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 2:21-cv-06907-KES <br><br> MEMORANDUM OPINION AND ORDER |

## I.
## BACKGROUND

Plaintiff Sandra H. ("Plaintiff") applied for Title II disability insurance benefits ("DIB") and Title XVI supplemental security income ("SSI") alleging a disability onset date of February 12, 2019, when she was hospitalized for congestive heart failure. Administrative Record ("AR") 174-80, 485. On January 11, 2021, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by counsel, appeared and testified along with a vocational expert ("VE"). AR 31-56. On March 10, 2021, the ALJ issued an unfavorable decision. AR 12-30.

The ALJ found that Plaintiff suffered from the severe, medically determinable impairments ("MDIs") of "congestive heart failure with

cardiomyopathy, hypertension, and obesity." AR 18.  The ALJ discredited Plaintiff's symptom testimony for reasons including Plaintiff's receipt of unemployment benefits during her claimed period of disability.  AR 23, 36-39.  The ALJ found that despite her MDIs, Plaintiff had the residual functional capacity ("RFC") to perform "a range of medium work" with additional limitations on postural activities.  AR 21.  Based on this RFC and the VE's testimony, the ALJ found that Plaintiff could not perform her past relevant work as a cashier or in-home caregiver, but she could work as a conveyor feeder, hand packager, and kitchen helper.  AR 24-25, 206.  The ALJ concluded that Plaintiff was not disabled.  AR 25-26.

## II.
## ISSUES PRESENTED

<u>Issue One</u>:  Whether the ALJ erred at step two of the sequential evaluation process by failing to find Plaintiff's "abdominal pain/diarrhea" a severe MDI.  (Dkt. 20, Joint Stipulation ["JS"] at 2-3.)

<u>Issue Two</u>:  Whether the ALJ erred in determining Plaintiff's RFC by failing to account for functional limitations caused by Plaintiff's (1) "abdominal pain/diarrhea," and/or (2) "severe central canal stenosis at L3-4 and L4-5," as observed in a November 20, 2020 abdominal CT Scan (AR 608).  (JS at 2, 8.)

<u>Issue Three</u>:  Whether the ALJ failed to discharge his duty to develop the record by ordering a consultative examination ("CE").  (JS at 2, 18.)

## III.
## DISCUSSION

A. **ISSUE ONE: Abdominal Pain and Diarrhea.**

    **1. Summary of Relevant Evidence.**

        a.  Medical Records.

On April 3, 2019, Plaintiff visited her primary care team at East Community Health Center ("ECHC") complaining of "diarrhea x 1 mo on and off."  AR 439.

2

Years earlier, she had both her appendix and gallbladder removed. AR 439. She reported abdominal pain, a change in stool pattern, diarrhea, and nausea, but she denied constipation and vomiting. AR 440. ECHC assessed gastroenteritis.[1] AR 441. ECHC recommended that she change her diet, avoid ibuprofen, and take antibiotic Cipro tablets. AR 441-42.

In June 2019, she complained to ECHC of bloody stool "onset 4 days ago." AR 470. This time, however, she denied diarrhea and nausea. AR 470, 472. ECHC scheduled stool and urine tests and counseled her on diet changes. AR 473. ECHC stopped her Cipro prescription, concluding that her symptoms were not caused by a bacterial infection. AR 471, 474.

Plaintiff underwent an abdominal ultrasound on August 1, 2019, and an abdominal CT scan on August 3, 2019. The ultrasound showed "questionable areas of mild small bowel wall thickening [that] could represent a nonspecific enteritis, trace ascites.[2]" AR 487. The CT scan showed "bowel loops in the central lower abd and upper pelvis suspicious for enteritis either infectious or inflammatory" and "trace antraabd[3] ascites mostly perihepatic and perisplenic [i.e., around the liver and spleen]." AR 487.

On August 7, 2019, Plaintiff visited ECHC for assistance completing general relief forms. AR 460. She reported becoming homeless two weeks earlier. AR

---

[1] "Gastroenteritis is a short-term illness triggered by the infection and inflammation of the digestive system. Symptoms can include abdominal cramps, diarrhea and vomiting. Some of the causes of gastroenteritis include viruses, bacteria, bacterial toxins, parasites, particular chemicals and some drugs." See https://www.betterhealth.vic.gov.au/health/conditionsandtreatments/gastroenteritis.

[2] Ascites refers to abnormal peritoneal fluid, a condition that can be associated with congestive heart failure. See https://my.clevelandclinic.org/health/diseases/14792-ascites.

[3] Antra is the plural of antrum, referring to a body chamber or cavity. See https://www.dictionary.com/browse/antrum.

460. At that time, she was negative for abdominal pain. AR 462.

On August 9, 2019, Plaintiff went to the emergency room ("ER"). AR 455. In a later record, Plaintiff reported that she went due to "colitis," but the AR does not contain records from this ER visit. AR 455.

On August 12, 2019, Plaintiff visited ECHC to follow-up after her ER visit. She reported abdominal pain starting "1 week ago." AR 455. She rated her abdominal pain 4/10. AR 458. ECHC assessed her pain as "mostly epigastric," i.e., in the upper abdomen and is "associated with [eating] greasy food and spicy food." AR 455. ECHC diagnosed "dyspepsia," noted that Plaintiff had received omeprazole (a heartburn medication) at the ER, and instructed her to change her diet. AR 455, 458.

On August 23, 2019, Plaintiff consulted with Citrus Valley Gastro Covina ("CVGC"). AR 487. She reported experiencing "chronic intermittent diarrhea" since February 2019; she went to the ER earlier in August because of abdominal pain but was "feeling improved." She had bowel movements "1x/d up to multiple times per day." She "never took any rx to help" and was "on the fence" as to whether she really had heartburn. She wanted screening for colon cancer. AR 487. CVGC prescribed Colyte (a laxative used to clean out the intestines before certain bowel exam procedures), Dulcolax (a stool softener), and omeprazole. AR 488. CVGC also recommended Metamucil and diagnostic tests. AR 490.

On August 29, 2019, Plaintiff visited ECHC again complaining of "stomach pain." AR 450. She had heartburn and epigastric abdominal tenderness. AR 452-53; but see AR 452 (rating pain 0/10). She reported seeing "GI [i.e., CVGC] last week" but "did not get any meds from them." AR 450. ECHC "went over med records" from CVGC and noted that Plaintiff was to return there after completing tests. ECHC made sure that the medications prescribed by CVGC were sent to Plaintiff's pharmacy. AR 453.

There are no records reflecting gastrointestinal complaints during the last

quarter of 2019.  In January, February, March, August, and September of 2020, Plaintiff denied diarrhea and abdominal pain.  AR 432-35, 445, 507, 512, 515, 517-20, 525-27, 541, 547-48, 555.  Plaintiff's records from March 2020 are notable.  On March 30, 2020, at 12:40 p.m., Plaintiff had a telephonic consult with ECHC to discuss a recent mammogram.  AR 505.  She denied diarrhea, nausea, and vomiting.  AR 507.  On the very same day at about 10:11 p.m., she went to the ER complaining of abdominal pain "since this morning" along with vomiting and diarrhea.  AR 833, 835.  She had a mild urinary tract infection and an "unremarkable" abdominal CT scan.  AR 835.  The ER assessed, "likely gastroenteritis."  AR 835.

About two weeks later, Plaintiff went back to the ER complaining of an allergic reaction, possibly from a spider bite, that caused her face to swell.  AR 779-80.  She did not report any gastrointestinal symptoms at that time.  AR 780-81.  Similarly, when Plaintiff went to the ER in October 2020 fearing that she had broken her toe, she did not complain of gastrointestinal issues.  AR 665, 715, 733.

On November 20, 2020, however, Plaintiff went to the ER complaining of abdominal pain with vomiting, diarrhea, and bloody stool. AR 589, 593.  She reported an onset of symptoms that morning and "similar symptoms of colitis exacerbations in the past."  AR 630.  She underwent an abdominal CT scan which showed "no evidence of colonic wall thickening to suggest colitis.  There is however small bowel wall thickening compatible with enteritis.  There is minimal ascites."  AR 608, 663-64.  The ER doctor concluded, "I doubt bacterial enteritis." AR 632.  Plaintiff was diagnosed with enteritis, discharged in stable condition, and advised to follow up with her primary care physician.  AR 598, 632.

On December 3, 2020, Plaintiff went back to ECHC to follow up on this ER visit.  AR 559.  She acknowledged that she had been scheduled for a colonoscopy and EGD (a test to examine the esophagus and stomach) with CVGC, but cancelled those procedures and never re-scheduled them because her husband had

passed away about that time. AR 49, 559. The ER had given her Zofran, and ECHC prescribed Bentyl to reduce cramping.[4] AR 559. Her treatment plan was to continue those medications while scheduling more tests and labs. AR 562, 564, 568, 571.

### b. Medical Opinion Evidence.

State agency consultant H. Han, M.D., considered Plaintiff's applications in April 2020. AR 64. Dr. Han identified congestive heart failure and hypertension as Plaintiff's only MDIs. AR 62. In June 2020, consultant J. Rule, M.D., found the same MDIs. AR 81. Both doctors opined that Plaintiff could do medium work with some additional limitations. AR 63-64, 82-83. The ALJ found that the State agency consultants' RFC opinions were persuasive, because they were supported by and consistent with the medical evidence. AR 21-22. The ALJ adopted an RFC consistent with the State agency consultants' opinions. AR 21.

### c. Plaintiff's Testimony.

Plaintiff alleged that she became unable to work due to congestive heart failure, Graves' disease[5] in remission, and high blood pressure. AR 175, 215. On April 3, 2020, Plaintiff completed an exertion questionnaire. AR 227-29. She reported, "I get diarrhea 2-3 times per week due to colitis." AR 227; compare AR 740 (4/26/20 ER records denying abdominal pain).

When asked at the administrative hearing to describe what "problems" would prevent her from working, Plaintiff identified "stomach pain" and "diarrhea" among other conditions. AR 41-42. She had last visited her

---

[4] Zofran (a brand name for the generic drug ondansetron) can be used to treat nausea and vomiting. Bentyl (a brand name for the generic drug dicycloverine) can be used to treat irritable bowel syndrome. See www.webmd.com.

[5] Graves' disease is an immune system disorder that causes hyperthyroidism. See www.mayoclinic.org.

gastroenterologist at CVGC "a little less than a year" earlier, and she was still taking Bentyl and Zofran. AR 48. She testified, "I feel like my stomach issue gets bad, then gets a little better, then it gets bad. So we're just trying to play with it right now. [The doctor is] going to send me. He's just doing some testing himself … like bloodwork and taking samples and stuff like that." AR 49. When describing her functional limitations, Plaintiff focused on fatigue caused by her heart condition. AR 45-46. She also attributed fatigue to her stomach issues. AR 41-42.

### d. The ALJ's Decision.

At step two, the ALJ did not identify gastroenteritis or colitis as MDIs, let alone as "severe" MDIs. AR 18-20  In summarizing the medical evidence, the ALJ did not mention Plaintiff's gastrointestinal symptoms. AR 22-23.

## 2. Analysis of Claimed Error.

A "severe" MDI is one that "more than minimally" affects the claimant's ability to work over a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1509, 416.909. Plaintiff contends that the ALJ erred by not finding her "abdominal pain/diarrhea" a severe MDI. (JS at 3-4.)

First, diarrhea and abdominal pain are not MDIs; they are symptoms that could be caused by an MDI. 20 C.F.R. §§ 404.1529, 416.929. The Court will interpret Plaintiff's briefing as arguing that the ALJ should have found that Plaintiff suffered from the severe MDI of gastroenteritis or colitis.

As for colitis, abdominal CT scans in August 2019 and November 2020 were not interpreted as showing colitis. AR 487, 608. Plaintiff, therefore, fails to identify in her medical records a diagnosis of colitis supported by objective, clinical findings, the prerequisites for establishing an MDI. 20 C.F.R. §§ 404.1508, 416.908.

As for gastroenteritis, Plaintiff fails to point to any evidence or explain in her briefing how her symptoms more than minimally affected her ability to work

for twelve consecutive months.  In 2019, Plaintiff described her abdominal pain as intermittent; she sometimes had no symptoms, and when she did, they often had sudden onset and improved rapidly with treatment.  AR 439, 455-58, 462, 470, 487.  In 2020, she often had no symptoms.  AR 432-35, 445, 507, 512, 517-20, 525-27, 541, 547-48, 555.  In March 2020, she participated in a telemedicine visit on the same day when she was experiencing abdominal pain and did not consider the pain significant enough to mention.  AR 505-07, 833-35.  There are no medical records in which she complains of fecal incontinence or needing to spend an atypical amount of time in the bathroom.  For all these reasons, Plaintiff has not demonstrated that the ALJ erred at step two.

B. **ISSUE TWO: The ALJ's RFC Determination.**

**1. Gastroenteritis.**

Regardless of whether an MDI is severe, the ALJ must account for the functional limitations caused by a claimant's MDIs in determining an RFC.  20 C.F.R. §§ 404.1545, 416.945.  Plaintiff argues that the ALJ erred by failing to account for functional limitations caused by her gastroenteritis.  (JS at 8-9.)  Plaintiff, however, fails to point to any evidence demonstrating that her gastroenteritis actually caused functional limitations or suggest what those functional limitations would be.  To the extent she alleges that it caused fatigue (AR 41-42), the ALJ discussed fatigue and explained why he discredited Plaintiff's testimony about that symptom, i.e., she generally denied fatigue at medical appointments.  AR 23.

**2. Central Canal Stenosis.**

The ALJ found that Plaintiff suffered from the MDI of "degenerative disc disease of the lumbar spine," but that it was not severe.  As the ALJ explained, Plaintiff's November 2020 abdominal CT scan to investigate abdominal pain incidentally revealed central canal stenosis at the L3-4 and L4-5 levels.  AR 19, citing AR 608, 664, 869.  The ALJ concluded that this back condition was not

severe, because Plaintiff's medical records contain no complaints of back pain and no treatment for back pain, and because Plaintiff did not identify back pain as a disabling symptom. In March 2020 about eight months before the CT scan, Plaintiff specifically denied back pain. AR 19, citing AR 833.

Plaintiff contends that the ALJ's finding that Plaintiff could do medium work, despite her obesity and degenerative disc disease, lacks substantial evidentiary support. Plaintiff argues that the ALJ relied on the State agency consultants' RFC opinions, but the consultants considered Plaintiff's applications in the first half of 2020, so they did not see the November 2020 CT scan results. (JS at 9-10.) Plaintiff fails to demonstrate error with this argument. As the ALJ pointed out, there is no evidence that Plaintiff ever complained of back pain, so knowing about the November 2020 CT scan would not have changed the State agency consultants' opinions concerning Plaintiff's RFC.

Plaintiff also argues that the ALJ impermissibly played doctor by concluding that Plaintiff's degenerative disc disease did not cause functional limitations. (JS at 11.) But the ALJ correctly noted that Plaintiff never complained of back pain nor sought treatment for back pain. On this record, the ALJ did not need a medical expert to determine that Plaintiff's degenerative disc disease was not causing function-limiting pain.

C. **ISSUE THREE: Development of the Record.**

Plaintiff contends that the ALJ had a legal duty to order a CE to obtain opinions on whether Plaintiff's gastroenteritis and degenerative disc disease caused functional limitations. (JS at 18.)

An ALJ's duty to develop the record is triggered only when the existing record contains "ambiguous evidence" or is "inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). One way to develop the record is by ordering a CE. The ALJ "has broad latitude in ordering a consultative examination" and "[t]he government is not

required to bear the expense of an examination for every claimant." Reed v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001) (citations omitted). The types of cases that "normally require a consultative examination" include those in which "additional evidence needed is not contained in the records of [the claimant's] medical sources," and those involving an "ambiguity or insufficiency in the evidence [that] must be resolved." Reed, 270 F.3d at 842 (alterations in original) (citations omitted).

For the reasons discussed above, there was no ambiguity or inadequacy in Plaintiff's medical records concerning the lack of functional limitations caused by her gastroenteritis and degenerative disc disease over a period of twelve consecutive months. Again, Plaintiff fails to demonstrate legal error.

## IV.
## CONCLUSION

For the reasons stated above, IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED: August 11, 2022

_____
KAREN E. SCOTT
United States Magistrate Judge